*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMBER M. PATTEE, Guardian for SDW, a
protected person,

        Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee.

UNPUBLISHED
April 10, 2025
9:44 AM

No. 368787
Wayne Circuit Court
LC No. 21-013774-NF

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER[*], JJ.

K. F. KELLY, J. (*concurring*).

While I agree with the majority's ultimate determination that the trial court's decision to grant summary disposition in defendant's favor was not error, I write separately because I do not interpret *Andary v USAA Cas Ins Co*, 512 Mich 207; 1 NW3d 186 (2023), as broadly as the majority.

In that case, the Michigan Supreme Court addressed the issue of whether uncapped coverage that was contracted for before the 2019 no-fault amendments took effect applied after the effective date of the amendments. *Id*. at 215. Unlike in this case, the accidents at issue in *Andary* took place before the 2019 Amendments took effect. *Id*.

Rejecting the argument that no-fault benefits were "wholly statutory," the Court explained that "PIP benefits provided under a no-fault policy of insurance have both statutory and contractual characteristics." *Id*. As relevant here, the Court stated that "the scope of available PIP benefits under an insurance policy vests at the time of injury." *Id*. at 238. In other words, "neither the insured nor the insurer can unilaterally change the terms of a policy after a covered accident occurs." *Id*. These statements of the law, however, were in response to the defendants' argument that "the scope of PIP benefits does not vest at the time of injury because a claim for a specific

---

[*]Former Court of Appeals Judge, sitting on the Court of Appeals by Assignment.

amount of PIP benefits does not accrue until medical care is provided." *Id*. In other words, the defendants argued that vesting occurred even later in time—i.e., at the time medical service is provided. The Court rejected this argument.

Thus, because the plaintiff's benefits vested at the time of injury, the *Andary* Court also had to decide whether the 2019 amendments "retroactively modified these uncapped lifetime benefits." *Id*. at 246. Concluding they did not, the Court stated:

> We conclude that application of the 2019 amendments of MCL 500.3157(7) and (10) to Andary and Krueger would constitute a retroactive reduction of their vested contractual rights to receive uncapped PIP benefits pursuant to the insurance policies and incorporated statutes that existed when they were injured. The Legislature did not clearly state that it intended the new fee schedule in MCL 500.3157(7) or the new attendant care limitations in MCL 500.3157(10) to apply retroactively to individuals with a vested contractual right to PIP benefits under the pre-amendment no-fault statutes, which means that these provisions do not apply to any insured who was injured while covered by an insurance policy issued before June 11, 2019. Accordingly, the insurance policies and the disputed portion of the no-fault statutes that existed when Andary and Krueger were injured control their entitlement to PIP benefits, not the amended provisions enacted by 2019 PA 21 and 2019 PA 22. [*Andary*, 512 Mich at 256-257 (footnote omitted).]

The Court, however, explicitly did not decide the issue raised in this appeal, namely, whether preamendment policy language applies to an accident that occurred after the 2019 amendments took effect. The Court stated: "Although a factual scenario where the law changed between the time an insurance policy was issued and the injury or loss occurred could raise questions about what law governs, *the matter before us does not present such a conundrum*." *Id*. at 240-241 (emphasis added). In *Andary*, for example, it does not appear that there was any language—similar to the case at bar—that incorporated future statutory changes into the policy language.

Thus, although I do not believe that *Andary* provides the Court with a clear path to resolution for this case, I nevertheless join the majority's decision to affirm the trial court's order. The policy at issue stated that the language would be "automatically amended to conform with and provide coverage to the extent required under Chapter 31 of the Michigan Insurance Code of 1956. This includes any changes broadening or narrowing coverage, from the date required under the law, and as of the date required." Thus, it cannot be said that defendant did not direct its insureds' attention to the fact that the policy language could change; yet, the language itself says nothing about what did or will change. Before the accident, and purportedly in response to the 2019 amendments, defendant sent a letter to the insured explaining that "[a] change has been made to your Personal Auto Policy[,]" and "[y]our policy Declarations and any forms impacted by this change are enclosed." Nowhere in enclosed documents, however, did defendant explain that there was a change to the applicable language regarding the definition of "insured."

On the other hand, however, the preamendment definition of an "insured" in the policy contained a reference back to the no-fault act. To the extent SDW would have been able to recover benefits under the policy, it was through the preamendment provision defining an "insured" as a

person "occupying your covered auto" but "*only if entitled under the Code* to recover personal protection insurance (Personal Injury Protection) benefits under this policy." (Emphasis added.) After the 2019 amendments, when the accident happened, SDW was not "entitled under the Code" to recover as an out-of-state resident. See MCL 500.3113(c) ("A person is not entitled to be paid [PIP] benefits . . . if at the time of the accident . . . [t]he person was not a resident of this state, unless the person owned a motor vehicle that was registered and insured in this state."). But this was not a result of a change made by defendant; the language of the policy did not change. Rather, the underlying law referred to in the policy changed. While it can be said that defendant failed to notify the insured of the policy change, nothing in the actual policy was different, insofar as it related to the definition of an "insured." It is not at all clear, therefore, what defendant would have included in the notice to inform the insured of this fact.

Therefore, I concur.

/s/ Kirsten Frank Kelly